**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

KEVIN P. WALKER and
ANGIE WALKER                                                           PLAINTIFFS

        v.        Civil No. 05-5203

DEPUTY JOE POWELL, BENTON COUNTY,
ARKANSAS SHERIFF'S DEPARTMENT, in
his individual capacity                                                 DEFENDANT

### O R D E R

Now on this 7th day of September, 2006, comes on for consideration **Defendant's Motion For Summary Judgment** (document #11), and from said motion, the supporting documentation, and the response thereto, the Court finds and orders as follows:

1. In their complaint, plaintiffs Kevin and Angie Walker (the "Walkers" or "Kevin" and "Angie") allege that on December 21, 2002, they were unlawfully detained by defendant Joe Powell ("Powell"), a Benton County Sheriff's Deputy, and that Kevin was unlawfully arrested by Powell, and charged with reckless driving, speeding, following too closely, and improper passing. They further allege that there was neither reasonable suspicion nor probable cause to support either the traffic stop or the subsequent arrest, and that the arrest did not comport with the Nonresident Violator Compact, **A.C.A. §27-54-101** (the "NVC"). Based on these allegations, they contend that their Fourth Amendment right to be free from unreasonable seizures has been violated.

Powell answered, denying the Walkers' claims against him. The Walkers' claims against Powell in his official capacity were dismissed by separate Order, and the remaining claims are brought against him in his individual capacity only.

2. Powell now moves for summary judgment on the basis of qualified immunity, contending that he had, or arguably had, probable cause for the detentions and the arrest.

3. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States, 31 F.3d 696 (8th Cir. 1994).** Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp., 45 F.3d 262 (8th Cir. 1995).** These standards apply with equal force in evaluating a claim of qualified immunity. **Walker v. City of Pine Bluff, 414 F.3d 989 (8th Cir. 2005).**

4. Pursuant to **Local Rule 56.1**, the parties are supposed to file statements of facts which they contend are not in dispute. Powell filed a detailed statement, reciting his version of the incident in suit, to which the Walkers responded only that there was no reason for the traffic stop and that Kevin had a valid

Missouri driver's license at the time. Although this is not the type of response that is contemplated by **Local Rule 56.1**, it is clear to the Court that the Walkers dispute most of the allegations set forth in Powell's submission, and the Court will, therefore, evaluate the motion in that light.

5. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald**, **457 U.S. 800, 818 (1982)**. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." **Anderson v. Creighton**, **483 U.S. 635, 640 (1987)**(internal citations omitted).

Two inquiries are made when the Court considers an issue of qualified immunity. First, considered in the light most favorable to the plaintiff, do the facts alleged show the officer's conduct violated a constitutional or statutory right? If so, was that right clearly established at the time of the alleged violation? **Saucier v. Katz**, **533 U.S. 194, 201 (2001)**.

Qualified immunity is a question of law, not one of fact.

**Ricker v. Leapley**, 25 F.3d 1406 (8th Cir. 1994). However, the disposition of questions of law sometimes turns on disputed issues of fact, and this is such a case. The Court will, therefore, address these inquiries not in terms of the allegations of the Complaint, but on the basis of the evidence submitted in support of and in response to the pending motion, and in light of the favorable inferences that must be given to that evidence.

6. The depositions of both Kevin and Angie have been placed before the Court in support of the pending motion. Both testified that on the evening in question they were traveling with the flow of traffic. Angie testified that their vehicle was "a safe distance" behind the vehicle ahead. Kevin, who was driving, testified that he had entered a stretch of road where there were two southbound lanes, and he signaled a lane change and pulled out behind several cars which had moved to the right to overtake cars driving more slowly in the left-hand lane. He did not know his speed, but testified that he was going with the flow of traffic, and could not have been speeding. He testified that traffic was heavy and had been backed up for twenty miles, and that he was "a safe enough distance" and "two or three car lengths" behind the vehicle ahead. As he pulled into the passing lane, he saw a car closing on him rapidly, which then turned its lights and siren on.

Kevin testified that his first thought, when he saw blue lights and heard a siren behind him, was that there was an

-4-

emergency on the road ahead, and that he did not realize Powell was trying to stop him until he moved aside to let Powell pass and Powell pulled in behind him.  When he pulled over at a filling station in response to the blue lights, he testified that he got out and asked "what is the matter, what's going on," and was told to "put your hands on the car now."  He testified that he was handcuffed, taken to jail, stripped, fingerprinted, allowed to put on his underwear, and required to sit in his underwear in the booking area for five or six hours before being ticketed and released.

Powell's deposition was also made a part of the record.  He testified that he pulled Kevin over instead of stopping other vehicles that were speeding because he thought Kevin's vehicle presented a greater threat.  He further testified that he made the decision to arrest Kevin when Kevin left his car after being pulled over:

> The totality of everything that happened is the cause of me making my arrest decision.  Basically, the reckless driving, the following too close, everything involved, the tractor-trailer having to lockup his brakes, two cars having to leave to the side of the road.  Essentially, I have to make a decision whether I'm going to cite someone or whether I'm going to make an arrest.  When I pull my police car up behind someone and they lunge out of their car, they fling the door open and come running toward me, I immediately made the decision that on this reckless driving he was going to be arrested, and I wouldn't change a thing today.
>
> *   *   *
>
> Once again, I make a decision whether or not to issue

him a citation or whether to make an arrest, and this wasn't your typical reckless driver that just almost hit somebody, almost hit a car. This started with speeding. It went to following too close. It went to accelerating speeds, and it went to crossing the center line with oncoming traffic, and it went to two cars going off to the side of the highway, and then it went to an 18-wheeler having to lock up. . . . On top of all that, when I pull in behind the car the door doesn't just slowly open and the man stand there like I've had folks do. They stand there and give me that gesture of, you know, what's going on. This guy got out and went immediately to the door of my car. . . . He went straight to my vehicle, and I can't take those risks. There's too many of us who get hurt out here.

(a) <u>The Traffic Stop</u> -- Temporary detention during a traffic stop constitutes a seizure, and such a stop must, therefore, comport with the constitutional imperative of reasonability. **Whren v. United States**, **517 U.S. 806 (1996).** Although Powell testified to a set of facts upon which the traffic stop would have been reasonable, at this point the Court must view the record in the light most favorable to the Walkers. **Walker**, *supra*. If the trier of fact finds their version of events to be the correct one, there would be no reasonable predicate for Powell's traffic stop of the Walker vehicle. Taking the testimony of the Walkers in the light most favorable to them, and giving it all reasonable inferences, they have demonstrated a genuine issue of material fact as to whether there was any reasonable basis for Powell to have stopped the Walker vehicle. This issue must be resolved before the Court can dispose of the qualified immunity issue as to the traffic stop.

(b) <u>The Arrest</u> -- A similar factual dispute prevents the Court from presently resolving the qualified immunity issue with regard to Kevin's arrest. Powell testified that he ran a criminal records check and found that Kevin had a valid driver's license and was not wanted for any criminal offense. It is not suggested -- nor shown -- that it was illegal for Kevin to get out of his car to talk to Powell when he was pulled over.

As already noted -- for purposes of the pending motion -- the Court must accept the Walkers' accounts of the events leading up to Kevin's arrest. Those accounts do not include a description of any threatening behavior when Kevin got out of his car. Indeed, Kevin testified that he did nothing of a threatening nature.

In light of the evidence which is favorable to Walkers, the Court concludes that a genuine issue of material fact exists as to whether there was probable cause for Kevin's arrest and this issue must be resolved before the Court can dispose of the qualified immunity issue as to the arrest.

(c) <u>Clearly Established Rights</u> -- To complete its constitutional analysis, the Court must consider whether Powell's conduct violated a constitutional or statutory right that was "clearly established" on the date of the incident in question.

A police officer has probable cause to conduct a traffic stop upon observation of even a minor traffic violation. **U.S. v. Coney**, **456 F.3d 850, 855-56 (8th Cir. 2006)** (citing cases predating

the traffic stop here in question). Reckless driving, one of the offenses with which Kevin was charged, is a Class B misdemeanor, **A.C.A.§ 27-50-302**, for which the penalty ranges from five to ninety days in jail, **A.C.A. §27-50-308**. A police officer observing a driver engage in reckless driving would have probable cause to stop the driver, and to issue a citation.[1] There must, however, be an objectively reasonable basis for believing that a traffic violation has been committed to justify either a stop or an arrest. **U.S. v. Washington, 455 F.3d 824 (8th Cir. 2006)**.

In light of the foregoing authorities, the Court believes that Kevin's constitutionally protected rights <u>not</u> to be either stopped or arrested without probable cause were clearly established at the time in question. It follows, therefore, that should the facts (when properly found by a trier of fact) show there was no traffic violation constituting probable cause for the traffic stop, there would be no factual predicate for either the traffic stop or the ensuing arrest of Kevin -- and Powell would not be entitled to qualified immunity. On the other hand, should

---

[1] The Court need not, and therefore does not, decide at this point whether the NVC prohibited Kevin's arrest. This interstate compact, to which both Arkansas (A.C.A. §27-54-101) and Missouri (V.A.M.S. 544.046) are signatories, is predicated on the fact that many jurisdictions require nonresident motorists to post bond on traffic citations, failing which they are taken into custody, whereas a resident motorist, for the same offense, would be given a citation at the scene and allowed to continue on his way. A.C.A. §27-54-101, Article I. The relevant provision of the NVC for the case at bar is found in Article III, to-wit, that an officer is to issue a citation, without requiring bond, to a nonresident motorist when he is stopped for a traffic violation. The Court has found no Arkansas case law interpreting the NVC, and little interpreting the compact in other signatory states. Should the trier of fact determine that Powell had probable cause to stop the Walkers, and to arrest Kevin, the Court will allow the parties to brief the issue of whether Walker violated the NVC in arresting Kevin.

the facts establish that there was a traffic violation constituting probable cause for the arrest, then Powell may well be entitled to qualified immunity as to Walkers' claims against him.

7. For the foregoing reasons, the Court finds that genuine issues of material fact must be decided by the trier of fact before the Court can determine, as a matter of law, whether defendant Powell is entitled to the protections of qualified immunity. The pending motion will, therefore, be denied.

**IT IS THEREFORE ORDERED** that **Defendant's Motion For Summary Judgment** (document #11) is **denied.**

**IT IS SO ORDERED.**

                                          **/s/ Jimm Larry Hendren**
                                          **JIMM LARRY HENDREN**
                                          **UNITED STATES DISTRICT JUDGE**